[No. 58961-5. En Banc. January 28, 1993.]

SCOTT GALVANIZING, INC., *Respondent*, v. NORTHWEST ENVIROSERVICES, INC., *Petitioner*.

574

*LeSourd & Patten, P.S.,* by *David S. Grossman* and *Lawrence E. Hard,* for petitioner.

*Hackett, Beecher & Hart,* by *Theodore H. Millan* and *James M. Beecher,* for respondent.

UTTER, J. — Northwest EnviroServices, Inc. (Northwest) challenges a grant of summary judgment in favor of Scott Galvanizing, Inc. (Scott) for indemnity against liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 *et seq.* Northwest failed to move for summary judgment. The Superior Court for King County held, as a matter of law, the terms of a hazardous waste transportation agreement between the parties required Northwest to indemnify Scott for its CERCLA liability. After a bench trial to determine the amount of the indemnity, the trial court held Northwest liable for 39.6 percent of Scott's CERCLA costs and attorney fees. The Court of Appeals affirmed. *Scott Galvanizing, Inc. v. Northwest EnviroServices, Inc.,* 63 Wn. App. 802, 822 P.2d 345 (1992). We hold the trial court and the Court of Appeals erred in granting summary judgment for Scott inasmuch as questions of fact remain to be resolved.

I

Scott is a metal galvanizing operation that coats steel with zinc employing what is known as a "hot dip" process.

One byproduct of this process is a liquid chemical waste known as "spent pickle liquor", consisting of sulfuric acid, zinc, and other chemicals. Prior to 1979, Scott disposed of its spent pickle liquor through the Metro sewer system. In that year, Scott contracted with Liquid Waste Disposal Company, LIDCO, to haul the spent pickle liquor to the Western Processing, Inc. (Western Processing) hazardous waste disposal facility in Kent, Washington. Between 1979 and 1982, LIDCO transported at least 78,900 gallons of Scott's industrial waste to Western Processing.

Northwest is a Washington corporation that provides waste management consulting, waste disposal and storage, and waste transportation services. In 1982, Scott contacted Northwest about the possibility of employing Northwest to replace LIDCO. Negotiations between the two firms were handled by Lee Russell of Scott and Larry Petersen, the environmental manager at Northwest. In discussing the terms under which Northwest would transport Scott's chemical waste, Russell informed Petersen that Scott wished to continue disposing of its chemical waste at the Western Processing facility. Scott preferred the Western Processing facility because its operators charged the lowest prices. Also, Petersen apparently informed Russell that once the waste was loaded onto Northwest's trucks and the relevant paperwork completed, then the waste would become Northwest's "responsibility".

Prior to the execution of a written agreement, Northwest transported approximately 6,500 gallons of Scott's liquid waste to the Western Processing facility. See Affidavit of Victoria J. Bjorkman exhibits A-C; Clerk's Papers, at 131-41.

On May 4, 1982, Scott and Northwest executed a written contract entitled "Hazardous Waste Agreement", which was prepared by Northwest. The contract indicated the agreement became effective 3 days earlier, on May 1, 1982. Clerk's Papers, at 96. Of the various services generally offered by Northwest, only "[t]ransportation to a disposal site" and

"[d]isposal at [an] approved chemical processor" were selected by Scott. Clerk's Papers, at 93. The hazardous waste agreement contained the following indemnity provision:

> f. [Northwest] agrees to indemnify and hold Customer harmless from any and all liability, damages, costs, claims, demands and expenses (including reasonable attorney fees), including but not limited to pollution or other damages, as and to the extent that such liability, damages, costs, claims, demands and expenses are caused by, arise out of or in any manner result from the performance by [Northwest] of its services under this agreement or arise out of the negligence of [Northwest] provided, however, that the loss or claim does not result from the misidentification or failure to properly identify the materials by the Customer or the negligence of the Customer.

Clerk's Papers, at 94-95. The agreement also provided title to Scott's waste materials would pass to Northwest once the waste had been loaded onto Northwest's transportation vehicles and the appropriate paperwork had been completed.

Over the next year, Northwest transported some 45,200 gallons of liquid waste to the Western Processing facility. Northwest thus shipped a total of 51,700 gallons of spent pickle liquor. This figure was 39.6 percent of the total liquid waste delivered to the Western Processing facility on behalf of Scott. The remaining 60.4 percent was shipped by LIDCO between 1979 and 1982.

Shortly thereafter, Northwest learned that government agencies had begun questioning the adequacy of Western Processing's disposal methods. Larry Petersen contacted Lee Russell and suggested Northwest be allowed to dispose of Scott's waste at a different disposal site. Russell refused and insisted Northwest continue to transport the waste to the Western Processing facility because it was the cheapest disposal site available and was legal to use.

In April 1983, the United States Environmental Protection Agency (EPA) designated the Western Processing facility a "Superfund" cleanup site pursuant to CERCLA and ordered it to cease operations. The cleanup of the Western Processing site was divided into three phases: (1) surface cleanup (Phase I); (2) subsurface cleanup (Phase II); and (3)

groundwater cleanup (Phase III).[1] Western Processing and over 300 other entities, including both Scott and Northwest, were designated potentially responsible parties (PRP's). Under CERCLA, PRP's may be held liable for costs expended by the federal and state governments in responding to the release and threatened release of hazardous materials. In 1984, certain PRP's that had settled with the government regarding the Phase I cleanup brought a third party contribution action against Scott. The company settled this action for $50,000. A contribution action for the Phase II cleanup is presently pending in federal court. In addition, Standard Equipment, Inc., whose property adjoined the Western Processing site, brought suit against Scott and other hazardous waste generators. This suit was also settled by Scott for $50,000.

Scott then brought this state court action to recover its costs from Northwest under the indemnity clause. On August 15, 1990, Scott moved for summary judgment, claiming its CERCLA liability had triggered Northwest's duty to indemnify. Northwest responded it had no contractual duty to indemnify Scott because Northwest committed no overt act or omission in the performance of the transportation contract which caused or contributed to the CERCLA liability imposed on Scott.

The trial court awarded summary judgment to Scott. It held the agreement obligated Northwest to indemnify Scott for a 39.6 percent share of its existing and future liability, equal to the proportion of the waste shipped to the Western Processing facility by Northwest. Clerk's Papers, at 170. After a trial to determine reasonable attorney fees, the court awarded Scott 39.6 percent of: (1) the $50,000 incurred in settling the contribution action for the Phase I cleanup; (2) the $50,000 incurred in settling the Standard Equipment action; (3) $110,928.13 in attorney fees; and (4) $29,919.58 in

---

[1] *See* Comment, Boeing Co. v. Aetna Casualty & Surety Co.: *CERCLA Response Costs Covered "As Damages" Under Comprehensive General Liability Insurance Policies*, 14 U. Puget Sound L. Rev. 311 (1991).

costs. *Scott Galvanizing, Inc. v. Northwest EnviroServices, Inc.*, 63 Wn. App. 802, 807, 822 P.2d 345 (1992).

Northwest appealed and sought reversal of summary judgment and dismissal of the action or, in the alternative, a remand for further proceedings. Northwest claimed the Superior Court erred in interpreting and construing the indemnity clause. Under Northwest's interpretation of the clause, the parties intended indemnity to apply only to liabilities and costs caused by or contributed to by Northwest's performance of its contractual services. The Court of Appeals rejected Northwest's interpretation. It agreed with the trial court that, as a matter of law, the parties intended Northwest to assume responsibility for waste disposal risks not resulting either from Scott's negligence or its improper identification of waste materials. *Scott Galvanizing, Inc. v. Northwest EnviroServices, Inc.*, 63 Wn. App. 802, 810-12, 822 P.2d 345 (1992).

We granted Northwest's petition for review.

## II

■ CERCLA does not allow private parties to absolve themselves of liability for response costs through contractual arrangements. 42 U.S.C. § 9607(e)(1). It does, however, allow the execution and enforcement of agreements allocating the financial consequences of CERCLA liability among jointly and severally liable parties. *See Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1459 (9th Cir. 1986) ("Such agreements cannot alter or excuse the underlying liability, but can only change who ultimately pays that liability."). These agreements are interpreted and then construed according to the law of the state in which they were made. *See Lyncott Corp. v. Chemical Waste Mgt., Inc.*, 690 F. Supp. 1409, 1417 (E.D. Pa. 1988); *Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F. Supp. 1049, 1052-53 (D. Ariz. 1984), *aff'd*, 804 F.2d 1454, 1458-59 (9th Cir. 1986). The interpretation of the indemnity agreement in this case is therefore determined by the application of Washington law.

III

■ A party is entitled to summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). In resolving a motion for summary judgment, the court must consider all facts submitted and make all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Wilson*, at 437. Furthermore, in reviewing a grant of summary judgment, the appellate court engages in the same inquiry as the trial court. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 811, 828 P.2d 549 (1992). Therefore, in deciding this challenge to the grant of summary judgment in favor of Scott, we review the same record that was available to the trial court and make all reasonable inferences from the facts in favor of Northwest.

■ The question in this case involves interpretation of the indemnity clause contained in the Hazardous Waste Agreement. Indemnity agreements are interpreted like any other contracts, *Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 520, 527 P.2d 1115 (1974), and the touchstone of the interpretation of contracts is the intent of the parties. *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990); *Bonneville Power Admin. v. WPPSS*, 956 F.2d 1497, 1505 (9th Cir. 1992) (applying Washington law). Therefore, the intention of the parties must be the starting point for the interpretation of the indemnity agreement. *See Scruggs v. Jefferson Cy.*, 18 Wn. App. 240, 243, 567 P.2d 257 (1977) (indemnity provision construed to effectuate intent of the parties); *McDowell v. Austin Co.*, 105 Wn.2d 48, 53, 710 P.2d 192 (1985) (indemnity agreements enforced according to intent of parties). In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement, but also from "viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective inter-

pretations advocated by the parties." *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990) (quoting *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973)). *See, e.g., The Lakes at Mercer Island Homeowners Ass'n v. Witrak*, 61 Wn. App. 177, 180-82, 810 P.2d 27 (determining meaning of "fence" by reference to "overall purpose" of homeowner's agreement), *review denied*, 117 Wn.2d 1013 (1991).

Northwest claims the trial court and Court of Appeals misinterpreted the indemnity provision. Both courts concluded the parties intended for Northwest to assume financial responsibility for waste disposal risks not arising from Scott's misidentification of waste or negligence. Northwest assigns error to that conclusion based on our prior jurisprudence regarding indemnity provisions. Northwest asserts that under this jurisprudence the duty to indemnify is limited to those situations in which there has been some overt act, omission or culpable conduct on the part of the indemnitor. In particular, Northwest relies upon *Jones v. Strom Constr. Co., supra, Gall Landau Young Constr. Co. v. Hurlen Constr. Co.*, 39 Wn. App. 420, 693 P.2d 207, *review denied*, 103 Wn.2d 1026 (1985), and *Brame v. St. Regis Paper Co.*, 97 Wn.2d 748, 649 P.2d 836 (1982), *modified on other grounds sub nom. Brown v. Prime Constr. Co.*, 102 Wn.2d 235, 684 P.2d 73 (1984). According to Northwest, these cases stand for the proposition that "caused by, arise out of or in any manner result from the performance by [Northwest] of its services under this agreement" requires some culpable conduct on the part of the indemnitor before the duty to indemnify arises.

In *Jones* the Supreme Court considered an indemnity provision covering damages "arising out of, in connection with, or incident to the [indemnitor's] performance of this [contract]." *Jones*, 84 Wn.2d at 521. The court concluded such a clause did not give rise to a duty to indemnify unless some overt act or omission on the part of the indemnitor in its performance of the contract caused or concurred in causing the loss involved. *Jones*, 84 Wn.2d at 521-22. This hold-

ing was subsequently affirmed in *Brame*, on the basis of an identical indemnity provision, and followed by the Court of Appeals in *Gall Landau*, on the basis of a similar provision. Northwest argues *Jones* governs because of the similarity of the indemnity provision in that case to the one at issue here.

■ We need not resolve the question of the application of *Jones* and its progeny to this case because Scott has failed to meet its burden on summary judgment. Scott contends the parties intended Northwest to assume financial responsibility for waste disposal risks not resulting from Scott's misidentification of waste or negligence. In support, Scott relies upon three provisions of the Hazardous Waste Agreement and one piece of extrinsic evidence regarding the precontractual negotiations. Under *Berg*, interpretation of a contract provision is a question of law only when (1) the interpretation does not depend on the use of extrinsic evidence or (2) only one reasonable inference can be drawn from the extrinsic evidence. *See Berg*, 115 Wn.2d at 668 (citing Restatement (Second) of Contracts § 212(2) (1981)). Scott's arguments, either viewed individually or as a whole, fail to demonstrate only one reasonable inference can be drawn regarding the intent of the parties.

First, Scott argues from the exception in the indemnity provision indemnity was to be provided for all liabilities arising from causes other than Scott's negligence or misidentification of waste. This is not the only plausible reading of the exception. The indemnity provision covers only liabilities arising out of or resulting from performance of the Hazardous Waste Agreement, except for those liabilities caused by Scott's negligence or misidentification of waste. By definition, it does not cover liability not arising out of or resulting from performance of the agreement. Under a plausible reading of the exception, two different types of liability are excluded from the duty to indemnify. The duty to indemnify reaches neither liabilities arising under or resulting from the performance of the contract but which are caused by Scott's negligence or misidentification of waste, nor liabilities not arising under or resulting from the performance of

the contract at all. Indeed, Northwest argues that the liability in this case did not arise from the performance of the contract because Scott's CERCLA liability arose independently of the Hazardous Waste Agreement. This interpretation of the exception to the indemnity clause is not precluded by the language of the exception and the indemnity clause.

Scott next argues the provision in the Hazardous Waste Agreement passing title indicates Northwest was assuming financial responsibility for all liabilities arising subsequent to pickup. While the title provision does appear suggestive of a complete transfer of liability, it is not dispositive of the intention of the parties with regard to the indemnity provision. This is particularly true here where Scott's CERCLA liability did not arise because of any question of title to the waste, but rather solely through Scott's status as a "generator" of hazardous waste. *See* 42 U.S.C. § 9607(a)(3) (liability of generators).

Scott also relies upon the contractual requirement that Northwest comply with all federal and state pollution laws and regulations. CERCLA liability in this case, however, did not arise from the violation of any federal and state pollution laws by Northwest. Even if it had, the mere assurance of compliance with the pollution laws would not mandate that Northwest indemnify Scott on that basis alone. Of course, any violation of the pollution laws by Northwest giving rise to liability would in most circumstances also trigger the duty to indemnify under the terms of the indemnity provision.[2] This likely contemporaneity, however, does not imply that the assurance of compliance must be interpreted as a promise of indemnification.

Lastly, Scott alleges Larry Petersen informed Lee Russell that the spent pickle liquor would become Northwest's

---

[2]This would be true if liability were imposed on Scott because of violation of state or federal laws by Northwest during transportation of the liquid waste to the Western Processing facility. In that case, not only would Northwest be in violation of the compliance provision, but it would also be subject to a duty to indemnify. Even under Northwest's more limited interpretation of the indemnity provision, such liability would clearly have arisen out of or resulted from Northwest's performance of the contract.

"responsibility" once it had been loaded onto Northwest trucks and the appropriate paperwork completed. These allegations do not compel adoption of Scott's interpretation of the indemnity clause. In fact, Petersen's deposition testimony suggests these representations were made regarding responsibility for waste deposited at Northwest's own disposal facility, not at a competitor's. Clerk's Papers, at 56-57. A reasonable inference from these facts is Northwest would assume liability and responsibility for waste from Scott only when the waste was disposed of at Northwest. Viewing this piece of the record in the light most favorable to Northwest, it precludes the conclusion that there is no issue of material fact with regard to the intent of the parties in executing the indemnity clause.

█ Scott contends prevailing rules of construction require the indemnity provision to be interpreted most strongly against Northwest as the drafter of the contract. Respondent's Answer to Petition for Discretionary Review, at 5 (citing *Guy Stickney, Inc. v. Underwood*, 67 Wn.2d 824, 827, 410 P.2d 7 (1966)). While we do not take exception to this general statement, the threshold inquiry in contract interpretation involves the intent of the parties. " 'The cardinal rule with which all interpretation begins is that its purpose is to ascertain the intention of the parties.' " *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990) (quoting Corbin, *The Interpretation of Words and the Parol Evidence Rule*, 50 Cornell L.Q. 161, 162 (1964-1965)). Consistent with this observation, rules of construction should not be applied except where the intent of the parties cannot be discerned from the circumstances and considerations outlined in *Berg*. To do otherwise would be to allow generalized rules of construction to frustrate the specific intent of the parties in a given situation.

This case came before us solely with respect to a motion for summary judgment by Scott. We are not convinced that Scott's contentions are dispositive of the issue of the intent of the parties with respect to the indemnity clause. Therefore, summary judgment on behalf of Scott is inappropriate. *See Chelan Cy. Deputy Sheriffs' Ass'n v. Chelan Cy.*, 109 Wn.2d

282, 295, 745 P.2d 1 (1987) (if reasonable minds can draw different conclusions, summary judgment is not proper).

We reverse the order of the Superior Court for King County granting summary judgment to Scott and requiring Northwest to provide indemnification for a 39.6 percent share of Scott's response costs and attorney fees. The case is remanded for further proceedings not inconsistent with this opinion. As the substantially prevailing party in this appeal, Northwest is entitled to recover its costs on appeal.

DORE, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.
ANDERSEN, J., concurs in the result.