FILED
COURT OF APPEALS
DIVISION II

2014 SEP -3 AM 3: 22

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KENNETH HAUGE, | No. 44305-8-II |
| Appellant, | |
| v. | |
| CITY OF LACEY, a municipal corporation, | UNPUBLISHED OPINION |
| Respondent, | |
| THURSTON COUNTY, a subdivision of Washington State, | |
| Defendant. | |

LEE, J. — Kenneth Hauge appeals the trial court's order granting summary judgment in favor of the City of Lacey and dismissing his inverse condemnation claim. Hauge argues that, despite a previous settlement between the parties related to the City's condemnation and acquisition of a right-of-way over his property, the City failed to pay him just compensation for (a) the reduction of his property's value due to increased traffic noise; and (b) the removal of three trees outside of the right-of-way. Hauge also argues that the trial court erred in failing to address his claims for abuse, retaliation, negligence, and additional governmental takings. Because the settlement between Hauge and the City provided Hauge with just compensation for

any reduction in his property's value incident to the City's road expansion and the disputed trees, and Hauge's other contentions are meritless, we affirm. We also deny Hauge's request for attorney fees.

FACTS

A.  BACKGROUND

In May 2008, the City posted a public notice of its intent to widen Carpenter Road from two to four lanes as part of a long-term transportation project. From its inception, affected property owner Hauge was steadfastly opposed to the road-widening project. Hauge, who is extremely sensitive to noise, feared the project would destroy the character of his property and have adverse impacts on his and his elderly mother's health. Accordingly, Hauge rejected the City's many prelitigation offers to purchase a 4,058 square foot right-of-way over a narrow strip of his property.

In March 2010, the City offered Hauge $44,500 as just compensation for the right-of-way. The City took the position that "just compensation is the difference between the fair market value of the property before the acquisition and the fair market value of the property remaining after the acquisition. It is the property that needs to be evaluated and not the circumstances of the owner." Clerk's Papers (CP) at 180. Hauge rejected the offer and instead asked for "$425,000 for the total taking of [his] property." CP at 183. The City rejected the counter-offer because it was unwilling to "treat a partial acquisition as a total acquisition without any basis for making that decision." CP at 184.

Hauge and the City were unable to reach an amicable agreement. In Deccember 2010, the City successfully sought an order of public use and necessity in December 2010, to condemn

and acquire the right-of-way over Hauge's property. Before proceeding to a jury trial to establish just compensation, Hauge and the City negotiated a settlement.

During negotiations, the City's appraiser valued the right-of-way at $57,000. This included $20,000 for the land itself, $7,680 for the contribution value of affected timber (including trees outside the right-of-way that would need to be removed), and $29,320 in severance damages.[1] Hauge's own appraiser assessed the value of the right-of-way at $172,500. This figure included $34,500 for the land itself, $26,000 for trees to replace lost timber, $53,000 in severance damages, and $59,000 for loss of the land value for accessory dwelling units and a cedar fence. In March 2011, the parties filed a "Stipulation of Settlement" with the trial court evidencing their agreement to settle for $150,000. CP at 317-19. After Hauge accepted the funds, the trial court entered a "Decree of Appropriation" memorializing that the $150,000 represented the "just compensation for the [City's] taking of the [Hauge] property." CP at 322.

Following the settlement, the City began work on the right-of-way. However, a dispute soon arose over Hauge's refusal to allow the City to remove three trees on his property abutting the right-of-way. Believing it had compensated Hauge for the trees as part of the settlement, the City moved to enjoin Hauge from interfering with their removal. As part of its motion to enjoin, the City included a declaration from City Engineer Roger Schoessel and the construction plans filed as part of the public use and necessity hearing. Schoessel's declaration stated that "Hauge

---

[1] Severance damages are statutorily recognized in Washington. RCW 8.12.190(2). "A loss of value to the land that is not taken is referred to as 'severance damages.'" *Cent. Puget Sound Reg'l Transit Auth. v. Heirs & Devisees of Eastey*, 135 Wn. App. 446, 456, 144 P.3d 322 (2006) (quoting *Shields v. Garrison*, 91 Wn. App. 381, 388 n.2, 957 P.2d 805, 967 P.2d 1266 (1998)). Both the City's appraiser and Hauge's appraiser refer to these damages as "proximity damages," but, from the context, it is clear that severance damages are intended. CP at 128.

refused to allow the removal of the three (3) trees shown on Plan Sheet 7 even though the City [had] paid for those trees as part of the settlement." CP at 39. In May 2011, the trial court granted the City's motion to enjoin Hauge from interfering with removal of the trees. Hauge did not appeal the order, and construction on the project continued.

B.    PROCEDURE

In June 2012, Hauge filed a complaint against the City for inverse condemnation. The complaint alleged that (1) the City did not compensate Hauge for the three trees it removed outside of the right-of-way; (2) the City's actions rendered Hauge's auxiliary dwelling unit uninhabitable; (3) the retaining wall built by the City did not comply with manufacturer specifications, posed a substantial risk of collapse, and encroached on Hauge's property; (4) the City failed to compensate Hauge for heightened noise levels resulting from increased traffic on Carpenter Road; and (5) the City's actions caused a loss of lateral support on the property.

The City moved for summary judgment in response to Hauge's complaint.[2] Hauge opposed the City's summary judgment and filed a cross-motion for summary judgment.

Before the summary judgment hearing, Hauge amended his complaint. In the amended complaint, Hauge alleged that (1) "The actions of the defendants have damaged the Property to the extent that the Property is worthless to the plaintiff and a constructive taking has occurred," (2) he should be compensated for the three trees removed outside of the right-of-way, and (3) "the plaintiff has a cause of action for severance damages arising from diminution in the value of

---

[2] The City submitted a CR 12(b)(6) motion with considerable materials outside the pleadings and asked the court to treat it "procedurally the same as a Motion for Summary Judgment pursuant to CR 56." CP at 18. The trial court and the parties treated the City's motion as a summary judgment motion. On appeal, we review the motion as one for summary judgment. CR 12(c).

the Property caused by the construction and continued existence of the widened Carpenter Road." CP at 155-56.

Shortly thereafter, the trial court heard oral argument on the parties' motions for summary judgment, granted the City's summary judgment motion and denied Hauge's cross-motion for summary judgment. Hauge appeals.

## ANALYSIS

### A.   STANDARD OF REVIEW

We review a trial court's summary judgment ruling de novo. *Torgerson v. One Lincoln Tower, LLC,* 166 Wn.2d 510, 517, 210 P.3d 318 (2009). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Atherton Condo. Apartment–Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.,* 115 Wn.2d 506, 516, 799 P.2d 250 (1990). We consider "all the facts submitted and the reasonable inferences therefrom in the light most favorable to the nonmoving party." *Atherton,* 115 Wn.2d at 516.

Summary judgment is subject to a burden-shifting scheme. *Young v. Key Pharms., Inc.,* 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The moving party has the initial burden to show the nonexistence of genuine issues of material fact. *Young,* 112 Wn.2d at 225. If the moving party satisfies its initial burden, the inquiry shifts to the nonmoving party to "present evidence that demonstrates that material facts are in dispute." *Atherton,* 115 Wn.2d at 516. However, "'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Young,* 112 Wn.2d at 225 (quoting *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Summary judgment should only be granted if the nonmoving party fails to show that a genuine issue as to a material fact exists. *Seven Gables Corp. v. MGM/UA Entm't Co.,* 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

## B.     JUST COMPENSATION

Hauge argues that the trial court misinterpreted the parties' settlement, and therefore, he has not been provided just compensation for the diminution in value of his property in light of increased noise from the expanded road or for the three trees removed during construction of the right-of-way. Because the only reasonable interpretation of the parties' settlement is that the City provided Hauge with just compensation for the trees and severance damages for the effects of the road, we disagree.

We interpret settlement agreements the same way we interpret other contracts. *McGuire v. Bates,* 169 Wn.2d 185, 188, 234 P.3d 205 (2010). "The touchstone of contract interpretation is the parties' intent." *Tanner Elec. Co-op v. Puget Sound Power & Light Co.,* 128 Wn.2d 656, 674, 911 P.2d 1301 (1996).

> In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement, but also from "viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties."

*Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.,* 120 Wn.2d 573, 580-81, 844 P.2d 428 (1993) (quoting *Berg v. Hudesman,* 115 Wn.2d 657, 667, 801 P.2d 222 (1990)). If "only one

reasonable inference can be drawn from the extrinsic evidence," we can determine the contract's meaning as a matter of law. *Scott Galvanizing*, 120 Wn.2d at 582.

In interpreting contracts, courts normally give words their "'general and ordinary accepted meaning and connotation' unless otherwise defined by the parties or by the dictates of the context." *Blue Mountain Mem'l Gardens v. Dep't of Licensing, Cemetery Bd.*, 94 Wn. App. 38, 43, 971 P.2d 75 (quoting *Keeton v. Dep't of Soc. & Health Servs.*, 34 Wn. App. 353, 360-61, 661 P.2d 982, *review denied*, 99 Wn.2d 1022 (1983)), *review denied*, 138 Wn.2d 1011 (1999). However, "a term of art in a given field is given its technical meaning when used in an agreement within that field." *Blue Mountain*, 94 Wn. App. at 43 (citing RESTATEMENT (SECOND) OF CONTRACTS § 202 (1981)).

The Decree of Appropriation stated that $150,000 was "just compensation" for the taking of Hauge's property. "Just compensation" is a term of art in eminent domain law. Where a partial taking of a plaintiff's land is involved, just compensation "is the difference between the fair market value of the entire property before the acquisition and the fair market value of the remainder after the acquisition." *State v. Sherrill*, 13 Wn. App. 250, 254-55, 534 P.2d 598, *review denied*, 86 Wn.2d 1002 (1975). "Fair market value is the amount of money which a well informed purchaser, willing but not obliged to buy the property would pay, and which a well informed seller, willing but not obliged to sell it would accept, taking into consideration all uses to which the property is adapted." *State v. Wilson*, 6 Wn. App. 443, 447, 493 P.2d 1252 (1972).

Here, Hauge argues that the parties intended the $150,000 settlement as compensation for the "fair market value of the 4,058 sq. ft. portion of property," and not compensation for the trees

and severance damages for the impact that the right-of-way would have on Hauge's remaining land. Br. of Appellant at 6. The record, however, belies this assertion.

Before reaching settlement, the City's appraiser valued just compensation for the right-of-way at $57,000, a figure that included $20,000 for the land itself, $7,680 for trees that had to be removed, and $29,320 in severance damages for the effect the new road would have on the property value of Hauge's remaining land. Hauge's appraiser valued just compensation at $172,500, which included $34,500 for the acquired land, $26,000 for lost timber, $53,000 for severance damages—a figure that explicitly accounted for "increased noise and vibration above the allowable standards," and $59,000 for the loss of land value for an additional dwelling unit and a cedar fence. CP at 55-56. Given these figures, it is highly improbable that the City paid Hauge $150,000 merely for 4,058 square feet of right-of-way and nothing else.

Additionally, although the stipulation of settlement does not specifically reference "just compensation," it does reference the City's petition for public use and necessity and the decree of appropriation.[3] Both these documents state that the parties intended the $150,000 settlement to represent "just compensation" to Hauge pursuant to the eminent domain proceedings. CP at 322, 314. When read together, and in context of the settlement negotiations between the parties, the only reasonable interpretation is that the parties intended the $150,000 settlement amounted to just compensation for the diminution of Hauge's property value, including the lost trees and severance damages. *Tanner Elec.*, 128 Wn.2d at 674. Thus, Hauge's argument that the

---

[3] The stipulation of settlement also specifically references chapter 8.25 RCW ("Additional provisions applicable to eminent domain proceedings").

settlement did not include damages for the trees and the impact of the right-of-way on his remaining land fails.

Hauge also asserts that he did not need to appeal the trial court's ruling on the motion to enjoin because the issue of whether he had been compensated for the three trees abutting the right-of-way "was simply not before the court" when it enjoined him from interfering with the City's construction activities. Br. of Appellant at 20. But this was precisely the issue before the trial court. The City moved to enjoin Hauge from interfering with the tree removal process because the three trees at issue "were purchased by the Petitioners as part of the settlement and judgment entered herein." CP at 37. Moreover, the City submitted the plans used during the public use and necessity hearing which clearly indicate that the three abutting trees would need to be removed. The trial court's order enjoining Hauge from interfering with the removal effort references these plans. Hauge never appealed the trial court's order. The doctrine of collateral estoppel precludes a party from relitigating an issue of ultimate fact previously determined by a valid and final judgment. *State v. Williams*, 132 Wn.2d 248, 253-54, 937 P.2d 1052 (1997). Thus, Hauge's assertion that he did not need to appeal the trial court's ruling on the motion to enjoin fails.

Finally, Hauge stresses that the following provision in the stipulation of settlement evinces the City's intent to purchase the right-of-way without also compensating Hauge for the diminution in property value to his remaining land:

It is further agreed by the [City] that neither this Stipulation nor the Judgment and Decree to be entered herein shall in any manner be used to prevent [Hauge] from filing a separate action for displacement, negligence, personal injury, or any other road related action on the part of the [City]. . . in constructing the Carpenter Road Improvement Project or relating to such roadway.

CP at 319. Contrary to Hauge's assertions, this "reservation of rights" clause does not allow Hauge to seek just compensation for damage for which the City has already paid. Rather, the clause recognizes that the settlement would not preclude Hauge from filing suit for *additional* takings or other causes of action not envisioned by the settlement. "Filing two separate lawsuits based on the same event—claim spitting—is precluded in Washington," *Landry v. Luscher*, 95 Wn. App. 779, 780, 976 P.2d 1274, *review denied*, 139 Wn.2d 1006 (1999), and it is unreasonable to read this provision as encouraging claim splitting.

The only reasonable interpretation from the extrinsic evidence is that the $150,000 settlement between Hauge and the City provided him just compensation for the acquired land, for the three trees abutting the right-of-way, and for the diminution in property value due to increased noise from the road expansion. Accordingly, we affirm the trial court's granting of summary judgment on these claims.

C.    HAUGE'S OTHER CLAIMS

Hauge next argues that summary judgment was improper because the trial court "focused only on his takings claims and failed to consider the nature or sufficiency of his remaining claims, which he characterized as abuse and retaliation claims." Br. of Appellant at 9. He also alleges that he sufficiently pled and argued that the City failed "to construct a retaining wall on the right-of-way according to the manufacturer's specifications" and that the City "took *additional* property from him for the project outside the scope of the original right-of-way." Br.

of Appellant at 13, 15. Because Hauge never actually brought causes of action for abuse and retaliation, and the record does not raise a genuine issue of material fact with regard to Hauge's contention that the City acted negligently in building the retaining wall or appropriated additional property during its construction, we hold that these claims were insufficiently pleaded and/or properly dismissed on summary judgment.

"Washington follows notice pleading rules and simply requires a 'concise statement of the claim and the relief sought.'" *Champagne v. Thurston County*, 163 Wn.2d 69, 84, 178 P.3d 936 (2008) (quoting *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 352, 144 P.3d 276 (2006)); *see also* CR 8(a). A complaint that fails to give the opposing party fair notice of asserted claims is insufficient. *Dewey v. Tacoma Sch. Dist. No. 10*, 95 Wn. App. 18, 25, 974 P.2d 847 (1999). "While inexpert pleadings may survive a summary judgment motion, insufficient pleadings cannot." *Pac. Nw. Shooting Park Ass'n*, 158 Wn.2d at 352.

Here, Hauge argues that, although his "complaint is not a model of clarity," it sufficiently pleaded claims for abuse and retaliation by City employees. Br. of Appellant at 13. Even assuming "abuse" and "retaliation" claims are recognized causes of action, Hauge's complaint does not indicate that he is bringing such claims or seeking relief on these grounds. In the "FACTS" portion of his complaint, Hauge mentions that "employees of the City of Lacey or its contractors frequently directed hostile and aggressive behavior at plaintiff Kenneth Hauge and his mother, Helen." CP at 8. But, under the "CAUSES OF ACTION" section, Hauge nowhere mentions a claim for abuse or retaliation. CP at 9-10. In addition, the trial court allowed Hauge to submit an amended complaint four days before it heard argument on the parties' summary judgment motions. Despite having the opportunity to clarify the causes of action for which he

would be seeking relief, Hauge did not mention a claim for abuse or retaliation. This is insufficient to give fair notice of his asserted claims. Thus, we hold that, even under Washington's generous notice pleading standards, Hauge failed to sufficiently plead claims for abuse and retaliation.

Hauge also argues that he sufficiently pleaded a claim for either negligence or inverse condemnation because the City failed to construct the retaining wall according to manufacturer specifications and the wall encroaches on his property. To counter Hauge's bare assertions in his pleadings, the City presented a number of expert declarations, stating that the wall was built according to manufacturer specifications, is structurally sound, and does not encroach on Hauge's property. Hauge failed to rebut the City's evidence on this point.[4] A party opposing summary judgment "may not rely merely upon allegations or self-serving statements, but must set forth specific facts showing that genuine issues of material fact exist." *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 157, 52 P.3d 30 (2002). Therefore, we hold that, even assuming Hauge properly pleaded a claim for negligence[5] or inverse condemnation related to the retaining wall, he failed to bring forth any evidence

---

[4] Hauge did submit an expert's report. However, contrary to Hauge's assertion that he "presented expert testimony on the issue" of the wall's "significant risk of future collapse," the report nowhere states that the alleged deficiencies in the construction of the retaining wall potentially damaged (or encroached on) Hauge's property. Br. of Appellant at 15.

[5] Hauge argues that he "sought leave to amend his complaint a second time to add a negligence claim; however, it appears that the amendment never occurred because the trial court dismissed the complaint on summary judgment." Br. of Appellant at 13 n.10. This contention misrepresents the record. Although Hauge argued in his cross-motion for summary judgment on September 28, 2012, that he "should be allowed to amend the complaint to allege damages due to negligence" in building the retaining wall, Hauge filed his amended complaint approximately

sufficient to survive summary judgment on this issue.

Finally, Hauge appears to argue that the City took additional property outside the right-of-way for which he was not compensated. Hauge fails to articulate what property this claim involves.[6] Therefore, we do not address this argument any further. *See* RAP 10.3(a)(5)-(6).

D.    ATTORNEY FEES

Hauge argues that the "City's response brief is so nonresponsive as to constitute no response at all" and, accordingly, the City "should pay [Hauge's] attorney fees and costs on appeal" as a RAP 18.9(a) sanction. Appellant's Reply Br. at 8. However, the City's response, though brief, does articulate arguments supporting its position that (a) "[t]he claim for the taking of trees outside of the right-of-way had been resolved by the condemnation action," (b) the parties settlement accounted for severance damages; and (c) Hauge's "statement that the City and the court were on notice that Mr. Hauge had claims different than that set forth in his Amended Complaint is stated for the first time in Mr. Hauge's Appellate Brief." Br. of Resp't at 6, 7-8. Therefore, we deny Hauge's request for attorney fees.

---

*one month later.* CP at 91. The trial court did not specifically address Hauge's negligence claim because he twice failed to plead it—not because summary judgment was prematurely granted.

[6] Hauge does not articulate what property this claim involves, but does cite to clerk's papers that were stricken by this court because they were not before the trial court when that court ruled on summary judgment.

No. 44305-8-II

We affirm the trial court's summary judgment dismissal of Hauge's lawsuit and deny attorney fees as a RAP 18.9(a) sanction against the City.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Hunt, J.

Bjorgen, A.C.J.

14